UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

EZEKIEL EDMONDS,

        Plaintiff,

v.

        Case No. 5:17-cv-463-Oc-34PRL

WARDEN, FCC
COLEMAN MEDIUM, et al.,

        Defendants.

**ORDER**

**I. Status**

Plaintiff Ezekiel Edmonds, an inmate incarcerated at the Federal Correctional Complex (FCC) in Coleman, Florida, initiated this action on October 10, 2017, by filing a pro se "Request for Relief Due to Deliberate Indifference by Medical in Not Providing Proper Medical Care (Doc. 1).[1] In accordance with the Court's January 10, 2018 Order (Doc. 8), Edmonds filed an Amended Complaint (AC; Doc. 9) on February 2, 2018. In the AC, he asserts claims pursuant to Bivens[2] against the FCC medical department, Richard

---

[1] The Court cites to the document and page numbers as assigned by the Court's Electronic Case Filing System.

[2] Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

Li, M.D.,[3] and Warden Manuel Ocasio.[4] He alleges that Defendants violated his federal constitutional rights when they denied him adequate medical care for a broken foot. As relief, he requests monetary damages.

This matter is before the Court on Defendants Ocasio and Li's Motion to Dismiss (Motion; Doc. 28) with exhibits (Docs. 28-1 through 28-11). The Court advised Edmonds that granting a motion to dismiss would be an adjudication of the case that could foreclose subsequent litigation on the matter and gave him an opportunity to respond. See Order (Doc. 22). Edmonds filed a response in opposition to the Motion.[5] See Plaintiff's Response to Motion to Dismiss Complaint (Response; Doc. 32). Thus, the Motion is ripe for review.

## II. Plaintiff's Allegations[6]

As to the underlying facts, Edmonds asserts that, in May 2014, he kicked a metal ladder and broke his foot while sleeping in his bunk. See AC at 4-5. He claims that Dr. Li, a Bureau of Prisons employee and "the leading [d]octor in the [m]edical [d]epartment,"

---

[3] The proper spelling of Defendant's surname is "Li." See Motion to Dismiss (Doc. 28) at 2.

[4] The Court dismissed Edmonds' claims against Warden Ocasio and the medical department. See Order (Doc. 10). Accordingly, Defendant Li is the only remaining Defendant.

[5] The Court granted Edmonds' motion to supplement the record, see Doc. 27, to the extent that he was permitted to submit medical records, as exhibits, when he responded to Defendants' Motion to Dismiss. See Order (Doc. 29).

[6] The AC is the operative pleading. In considering a motion to dismiss, the Court must accept all factual allegations in the AC as true, consider the allegations in the light most favorable to the plaintiff, and accept all reasonable inferences that can be drawn from such allegations. Miljkovic v. Shafritz and Dinkin, P.A., 791 F.3d 1291, 1297 (11th Cir. 2015) (quotations and citations omitted). As such, the recited facts are drawn from the AC and may differ from those that ultimately can be proved.

was deliberately indifferent to his serious medical needs. Id. at 5-6. He maintains that "no treatment has been given since the incident, except aspirin and x-rays." Id. at 7. He states that, on the morning of the incident, he informed his supervisor and went to sick call. See id. at 5. According to Edmonds, medical personnel told him that there was "nothing wrong" and issued pills. Id. He avers that he complained and reported to sick call for months, "but was told they could find nothing wrong." Id. He alleges that when medical staff suggested it was a diabetic-related injury, he explained that he had kicked a metal ladder and that "there was something very wrong with [his] feet." Id. According to Edmonds, medical personnel ordered x-rays, see id. at 6, and after a "quick examination" on January 12, 2015, they advised him that there was "nothing wrong," id. at 5. He asserts that the medical staff gave him "a pain killer even years after the incident," however, the medical department never corrected the injury. Id. He believes that his foot "healed improperly," id. at 6, which has caused him to suffer with arthritis, limited mobility, diabetic complications, and an inability to perform physical duties, see id. at 6-7.

### III. Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. Bellsouth Telecomm., 372 F.3d 1250, 1262 63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint

should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." Iqbal, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" Id. at 678 (quoting Twombly, 550 U.S. at 570). And, while "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998), "'this leniency does not give the court a license to serve as de facto counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an

action.'" Alford v. Consol. Gov't of Columbus, Ga., 438 F. App'x 837, 839 (11th Cir. 2011)[7] (quoting GJR Invs., Inc. v. Cty. of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998) (internal citation omitted), overruled in part on other grounds as recognized in Randall, 610 F.3d at 706).

## IV. Summary of the Arguments

In the Motion, counsel argues that the claims against both Defendant Ocasio and Defendant Li should be dismissed. Notably, the Court dismissed Edmonds' claims against Ocasio on February 21, 2018. See Order (Doc. 10). Therefore, the Court will consider the arguments raised in the Motion only as they relate to Defendant Li. Defendant Li requests dismissal of Edmonds' claims against him because Edmonds failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act (PLRA), before filing the instant Bivens lawsuit. See Motion at 5-8. Next, he argues that Edmonds fails to state plausible Eighth Amendment claims against him, see id. at 12-14, and that he is entitled to qualified immunity, see id. at 8-11. Defendant Li also asserts that he is entitled to sovereign immunity as to Edmonds' claims for monetary damages against him in his official capacity. See id. at 15-16. In his Response, Edmonds maintains that he has exhausted his administrative remedies, see Response at 2, 5, and states plausible Eighth Amendment claims, see id. at 3-6.

---

[7] "Although an unpublished opinion is not binding . . . , it is persuasive authority." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000) (per curiam); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

5

## V. Exhaustion of Administrative Remedies

## A. PLRA Exhaustion

The PLRA requires an inmate wishing to challenge prison conditions to first exhaust all available administrative remedies before filing an action under Bivens. See 42 U.S.C. § 1997e(a);[8] see Alexander v. Hawk, 159 F.3d 1321, 1324 (11th Cir. 1998) (stating that "section 1997e(a) by its own terms clearly applies to [plaintiff]'s Bivens action). Nevertheless, a prisoner such as Edmonds is not required to plead exhaustion. See Jones v. Bock, 549 U.S. 199, 216 (2007). Instead, the United States Supreme Court has recognized "failure to exhaust is an affirmative defense under the PLRA[.]" Id. Notably, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits" and is mandatory under the PLRA. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). Not only is there an exhaustion requirement, "the PLRA exhaustion requirement requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006).

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency

---

[8] The PLRA, at 42 U.S.C. § 1997e, provides:

(a) Applicability of Administrative Remedies. No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

addresses the issues on the merits)." Pozo,[9] 286 F.3d, at 1024. . . .

Woodford, 548 U.S. at 90. And, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ." Id. As such, the United States Supreme Court has emphasized:

> Courts may not engraft an unwritten "special circumstances" exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are "available."

Ross v. Blake, 136 S.Ct. 1850, 1862 (2016).

The determination of whether an inmate exhausted his available administrative remedies prior to filing a cause of action in federal court is a matter of abatement and should be raised in a motion to dismiss or be treated as such if raised in a summary judgment motion. Bryant, 530 F.3d at 1374-75 (citation omitted). The Eleventh Circuit has explained the two-step process that the Court must employ when examining the issue of exhaustion of administrative remedies.

> After a prisoner has exhausted the grievance procedures, he may file suit …. In response to a prisoner suit, defendants may bring a motion to dismiss and raise as a defense the prisoner's failure to exhaust these administrative remedies. See Turner, 541 F.3d at 1081.[10] In Turner v. Burnside we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. Id. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes

---

[9] Pozo v. McCaughtry, 286 F.3d 1022 (7th Cir. 2002).

[10] Turner v. Burnside, 541 F.3d 1077, 1084 (11th Cir. 2008).

> specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. Id. at 1082-83; see also id. at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015); see Pavao v. Sims, 679 F. App'x 819, 823-24 (11th Cir. 2017) (per curiam).

### B. Bureau of Prison's Grievance Procedure

The Bureau of Prisons (BOP) provides an internal grievance procedure for its inmates. See 28 C.F.R. § 542.10, et seq. Generally, to properly exhaust administrative remedies, a prisoner must complete a three-step sequential process if the informal resolution procedures fail to resolve the issue.[11] As to the formal grievance procedures, an inmate first must submit a Request for Administrative Remedy on the BP-9 form to the Warden within twenty days of the incident. See 28 C.F.R. § 542.14(a). If the inmate is not satisfied with the Warden's response, he may submit an appeal on the BP-10 form to the Regional Director within twenty days of the Warden's response. See 28 C.F.R. § 542.15(a). If the inmate is dissatisfied with the Regional Director's response, he may submit an appeal on the BP-11 form to the General Counsel within thirty days of the Regional Director's response. See id.

### C. Edmonds' Exhaustion Efforts

Defendant Li maintains that Edmonds failed to properly exhaust his administrative remedies as to the deliberate indifference claim against him before filing the instant lawsuit. See Motion at 5-8. In support of his position, Defendant submitted the relevant

---

[11] A federal inmate must "first present an issue of concern informally to staff" who must "attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy." See 28 C.F.R. § 542.13(a).

grievance exhibits. See Docs. 28-7 through 28-11. According to BOP records, Edmonds submitted six grievances and/or appeals relating to his foot pain, see Doc. 28-7 at 3: (1) Request for Administrative Remedy, No. 874064-F1, received on August 26, 2016; (2) Regional Appeal, No. 874064-R1, received on October 13, 2016; (3) Request for Administrative Remedy, No. 884982-F1, received on December 7, 2016; (4) Regional Appeal, No. 884982-R1, received on December 20, 2016; (5) General Counsel Appeal, No. 884982-A1, received on February 13, 2017; and (6) Regional Appeal, No. 884982-R2, received on March 21, 2017. See Docs. 28-8 at 3-5; 28-11, Declaration and Certification of records by Jeanie Register (Register Declaration).

BOP records reflect that Edmonds submitted a Request for Administrative Remedy, which the institution received on August 26, 2016. See Docs. 28-9 at 3; 28-8 at 3, No. 874064-F1. On September 13, 2016, Warden Ocasio responded, stating that a request for monetary damages could not be handled through the administrative remedy process and advised Edmonds that he could file a claim under the Federal Tort Claims Act. See Doc. 28-9 at 2. Edmonds appealed the response to the Regional Director. See Doc. 28-8 at 3, No. 874064-R1. The Regional Director rejected the appeal as untimely on October 20, 2016, and advised Edmonds that he could resubmit it and explain why he should not be faulted for the untimeliness. See Register Declaration at 3; Doc. 28-8 at 3. According to Register, "[t]here is no record that inmate Edmonds provided this information and continued the appeal." See Register Declaration at 3.

On November 30, 2016, Edmonds instead submitted another Request for Administrative Remedy, which the institution received on December 7, 2016. See Docs. 28-10 at 4; 28-8 at 4, No. 884982-F1. Warden Ocasio, on December 9th, denied the

grievance as repetitive of No. 874064-F1. See Docs. 28-10 at 2; 28-8 at 4. On December 14th, Edmonds appealed the denial to the Regional Director, see Docs. 28-10 at 8, 28-8 at 4, No. 884982-R1, who stated in pertinent part:

> This is in response to your Regional Administrative Remedy Appeal receipted [sic] December 20, 2016. You allege you are entitled to monetary compensation because you did not receive treatment for your broken foot for two years. You further contend you have filed a tort claim regarding this matter and you are filing this appeal to exhaust the administrative remedy process.
>
> A review of your medical records revealed you were evaluated by the Staff Physician on January 12, 2015, at which time you complained of pain and swelling of your right foot for two months in duration. You indicated your pain and swelling worsened upon walking, but you did not advise your medical provider of any injuries to your foot at that time. An x-ray was ordered and subsequently completed on January 21, 2015. The x-ray revealed a healing fracture of the right second metatarsal. You were evaluated by the Mid-level Practitioner (MLP) on the same day, and reported hitting your right foot on the bar rail of your bed approximately three months ago. The MLP applied a splint to your right foot and provided a set of crutches to help with ambulation. A request for an orthopedic consultation was also submitted; however, the Clinical Director disapproved the request because the trauma occurred three months before you reported it to Health Services and your facture was healing well. A repeat x-ray within three months and a follow-up with orthotics was recommended. A repeat x-ray was performed on February 25, 2015, which indicated the fracture line was still visible and degenerative changes with subchondral cystic formation. A request for a prosthetic/orthotic consultation was submitted for further management and treatment. You were seen by the Orthotics Specialist on May 21, 2015, at which time you were fitted for new orthopedic shoes.
>
> A second orthopedic consultation request was generated on January 27, 2016, with a provisional diagnosis of a right second metatarsal fracture with possible neuropathic joints. It was also noted you have a long history of diabetes mellitus and uncontrolled blood glucose. This request was approved and you were seen by the Orthopedic Specialist on April 21,

> 2016, at which time you received a diagnosis of degenerative joint disease (arthritis) and neuritis of the right foot. A cortisone injection was deferred at that time, but you were advised it would be available later, if needed.
>
> Medical intervention for this complaint includes non-steroidal anti-inflammatory medication for pain and swelling, orthopedic shoes, a splint, crutches and orthotic and orthopedic consultations. Should you experience any adverse changes in your condition, return to sick call for reevaluation. Medical care will continue to be provided to you consistent with Bureau of Prisons' policy.
>
> Monetary damages cannot be provided under the Administrative Remedy Program. If you wish to seek monetary compensation for an injury or loss allegedly caused by staff negligence, you may consider filing a separate claim under the appropriate administrative claim process (i.e. 31 U.S.C. § 3723 or the Federal Tort Claims Act).
>
> Accordingly, this response to your Regional Administrative Remedy Appeal is for informational purposes only. If dissatisfied with this response, you may appeal to the Office of General Counsel. . . .

Docs. 28-10 at 7, Response to Regional Administrative Remedy Appeal, dated January 11, 2017; 28-8 at 4. Edmonds appealed to the Office of the General Counsel. See Doc. 28-8 at 5, No. 884982-A1. On March 1, 2017, the General Counsel rejected the appeal because Edmonds failed to provide copies of the institutional administrative remedy request form and the institutional response. See Register Declaration at 3; Doc. 28-8 at 5. According to Register, the General Counsel informed Edmonds that he could resubmit the appeal "in proper form within 15 days of the date of the rejection notice." Register Declaration at 3-4. Instead of following the General Counsel's instructions, Edmonds appealed to the Regional Office on March 21, 2017. See id.; Doc. 28-8 at 5, No. 884982-R2. The Regional Director rejected the appeal on March 23rd because Edmonds sent the appeal to "the wrong level." Register Declaration at 4; Doc. 28-8 at 5. According to

Register, Edmonds did not file "any additional administrative remedies." Register Declaration at 4.

In his Response, Edmonds states that he "in fact" submitted the required BOP grievance and appeal forms, see Response at 2, and therefore, properly exhausted his administrative remedies before filing the instant lawsuit, see id. at 5. He states, in pertinent part:

> Again, everything required was done by the Plaintiff. After being informed of having not provided a copy of the institutional Administrative request or a copy of the institutional response, Petitioner/Plaintiff through Counselor of C2, corrected this documentation, but because he was out, the document remained in his custody, thus requiring it to be resubmitted within 15 days of the rejection notice.

Response at 5.

As to the initial step in the two-part process for deciding motions to dismiss for failure to exhaust under the PLRA, the Eleventh Circuit has instructed:

> Deciding a motion to dismiss for failure to exhaust proceeds in two steps: first, looking to the defendant's motion and the plaintiff's response, the court assesses whether dismissal is proper even under the plaintiff's version of the facts; and second, if dismissal is inappropriate under the plaintiff's version of the facts, the court makes "specific findings in order to resolve the disputed factual issues related to exhaustion." Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008). The burden is on the defendant to show a failure to exhaust. Id.

Arias v. Perez, 758 F. App'x 878, 880 (11th Cir. 2019) (per curiam). Accepting Edmonds' view of the facts as true, a dismissal of the claim against Defendant Li for lack of exhaustion is not warranted at the first step. Thus, the Court proceeds to the second step in the two-part process where the Court considers Defendant's arguments regarding exhaustion and makes findings of fact.

To fully exhaust, Edmonds was required to complete the third step by resubmitting his appeal (with proper documentation) to the General Counsel. See 28 C.F.R. § 542.15(a) ("Appeal to the General Counsel is the final administrative appeal."). Edmonds did submit another appeal, see Doc. 28-8 at 5, No. 884982-R2, however, he submitted it to the Regional Director instead of the General Counsel. Thus, the Regional Director rejected the appeal. See Register Declaration at 4; Doc. 28-8 at 5. While Edmonds attempted to exhaust the deliberate indifference claim by submitting grievance forms at each level, he failed to properly exhaust because he failed to resubmit the appeal (with proper documentation) to the General Counsel. See Register Declaration at 4. As such, Defendant Li's Motion is due to be granted with respect to the exhaustion issue as to Edmond's Eighth Amendment deliberate indifference claim against him.

Therefore, it is now

**ORDERED**:

1. Defendant Li's Motion to Dismiss (Doc. 28) is **GRANTED,** and Edmonds' claim against him is **DISMISSED** without prejudice for failure to exhaust his administrative remedies.

2. The Clerk shall enter judgment accordingly, terminate any pending motions, and close the case.

**DONE AND ORDERED** in chambers, this 20th day of December, 2019.

MARCIA MORALES HOWARD
United States District Judge

sc 12/19
c:
Ezekiel Edmonds
Counsel of Record